5/8/2025

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

FAC
EDWARD C. ALLEN
1930 Village Center Circle, Ste 3-525
Las Vegas, NV 89134
310-770-8495   Email: legalify@gmail.com
*Plaintiff in Pro se*

## IN THE UNITED STATES DISTRICT COURT

## DISTRCT OF NEVADA

EDWARD C. ALLEN, an individual

Plaintiff,

v.

WESTERN GOVENORS UNIVERSITY, a Non-profit Domestic Corporation; Kumar Pandya an individual; Allen C. Clarkson an individual; Elizabeth Krippner, an individual; Liz Moenich, an individual; Stan Schmidt, an individual; Brian Hicks, an individual; Heather Renee West an individual; Rochelle Snydor Kahl, an individual; Robbyn Micheals, an individual; Rachel Lay, an individual; DOES I-XX and ROES I-X inclusive.

Defendants.

CASE NO.: **2:25-cv-00325-RFB-NJK**

**PLAINTIFF'S [FIRST AMENDED] COMPLAINT AGAINST DEFENDANTS**

**[(FRCP 15(a)(1)(B)]
JURY DEMAND**

COMES NOW, EDWARD C. ALLEN, ( "Allen", "Plaintiff", " Plaintiff Allen ") *in pro se* hereby brings the underlying claims and requests for relief by his first amended complaint as a matter of right  pursuant to FRCP 15(a)(1)(B) and herby alleges against the above- named Defendants as follows:

## I. INTRODUCTION

This civil rights and educational equity action arises from the unlawful, discriminatory, and retaliatory treatment Plaintiff EDWARD C. ALLEN ("Allen") endured as a graduate student at Western Governors University ("WGU").

[FIRST AMENDED] COMPLAINT    -1-

Allen brings this action against Western Governors University ("WGU") and individually named co-defendants for a coordinated pattern of discriminatory, negligent, and retaliatory conduct that culminated in Allen's wrongful expulsion—mere steps from completing his third master's degree. Allen, a senior citizen and two-time WGU graduate with a documented disability, enrolled for his third masters in WGU's Master of Education in Instructional Design program in reliance on WGU's repeated assurances of ADA compliance, equitable treatment, and good faith educational practices.

The Plaintiff Allen, like countless students with learning disabilities, placed his trust in WGU's published policies and contractual promises, including the right to a supportive and accessible learning environment. Yet rather than honor its legal, contractual, and ethical obligations, WGU implemented arbitrary policies, imposed inaccessible third-party proctoring tools, and weaponized student conduct procedures to silence Allen's legitimate concerns—culminating in a retaliatory expulsion.

This case is not merely about academic disappointment. It is about a pattern of institutional systematic failure that implicates core constitutional, contractual, and statutory protections under the Americans with Disabilities Act, the Higher Education Act, Section 504 of the Rehabilitation Act, and the First and Fourteenth Amendments of the U.S. Constitution. WGU's conduct—individually and collectively—reflects a reckless disregard for Allen's rights as a disabled student, federal loan recipient, and engaged citizen with legitimate academic standing and expectations.

Allen seeks redress for these violations through compensatory, injunctive, and declaratory relief, and punitive damages. In doing so, Allen also seeks systemic accountability to deter educational institutions from perpetuating similar discriminatory and retaliatory schemes under the guise of neutral academic policy.

## II.    PARTIES

**Plaintiff**

1.  Plaintiff, EDWARD C. ALLEN ("Plaintiff" or "Allen"), is an individual residing in Clark County, Nevada, and at all times relevant was a graduate student enrolled in the Master of Education in Instructional Design program at Western Governors University.

**Defendants**

2.  Defendant, WESTERN GOVERNORS UNIVERSITY ("WGU"), is a private, non-profit online educational institution headquartered in Salt Lake City, Utah, doing business nationwide including in Nevada.

3.  Defendant KUMAR PANDYA is, upon information and belief, an executive or senior administrator at WGU with oversight over program operations and decision-making relevant to Plaintiff's claims.

4.  Defendant ALLEN C. CLARKSON is a WGU employee who participated in or supervised student disciplinary or conduct matters involving Plaintiff.

5.  Defendant ELIZABETH McCARTHY (identified as ELIZABETH KRIPPNER in prior filings) was Plaintiff's mentor or faculty advisor and a participant in the events giving rise to Plaintiff's disciplinary proceedings and expulsion.

6.  Defendants LIZ MOENICH, STAN SCHMIDT, BRIAN HICKS, HEATHER RENEE WEST (aka DETOMASO), ROCHELLE SNYDOR KAHL, ROBBYN MICHAELS, and RACHEL LAY were WGU faculty, staff, or administrators involved in the administration of student conduct matters, appeals, and related communications regarding Plaintiff's academic standing.

7. All individual defendants are sued in their individual and official capacities for conduct undertaken under color of law and/or under the authority of WGU.

### III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as it involves federal questions arising under the United States Constitution and federal civil rights statutes, including:

   a. The Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181 et seq.;

   b. The Rehabilitation Act of 1973, 29 U.S.C. § 794;

   c. 42 U.S.C. § 1983 (First and Fourteenth Amendments);

   d. The Higher Education Act, 20 U.S.C. § 1091 et seq.

9. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) for actions to redress deprivations under color of state law of rights secured by the Constitution and laws of the United States.

10. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367, as such claims arise from the same nucleus of operative facts.

11. Venue is proper in the District of Nevada under 28 U.S.C. § 1391(b), as the events or omissions giving rise to the claims occurred in Clark County, Nevada, and Defendants conduct business and reside within this judicial district.

### IV.   TIMELINESS OF CLAIMS AND TOLLING DOCTRINES

12. Plaintiff's claims are timely and properly filed under the applicable statutes of limitations because multiple legal doctrines toll or suspend the running of limitations periods in both federal and Nevada law. These doctrines apply due to Defendants'

misconduct, ongoing violations, and Plaintiff's circumstances, and therefore defeat Defendants' motion to dismiss based on alleged untimeliness.

**A. Fraudulent Concealment (Federal and Nevada)**

Defendants engaged in a pattern of concealment by misrepresenting Plaintiff's academic standing, eligibility to graduate, and available accommodations. WGU failed to disclose material information regarding Allen's progress, while falsely implying Allen's pathway to completion remained open and achievable. This conduct precluded Plaintiff from discovering the true nature of the injury and asserting his rights earlier.

- Federal Authority: *Bailey v. Glover*, 88 U.S. 342 (1875)

- Nevada Authority: *Tom v. First Am. Title Co.*, 93 Nev. 309 (1977)

**B. Discovery Rule**

Plaintiff did not become fully aware of the wrongful conduct by Defendants—including the denial of ADA accommodations, use of disciplinary measures to obfuscate due process, and reputational harm—until after exhausting internal resolution efforts. The discovery rule tolls the statute until Plaintiff knew or reasonably should have known the basis for legal action.

- Federal Authority: *Rotella v. Wood*, 528 U.S. 549 (2000)

- Nevada Authority: *Bemis v. Estate of Bemis*, 114 Nev. 1021 (1998)

**C. Continuing Violation Doctrine**

Defendants' conduct did not occur as a singular discrete act, but rather a series of interconnected discriminatory and injurious acts. These include ongoing denial of accommodations, reputational academic defamation, refusal to confer degree, and resulting

financial damages that continue to accrue—including spiraling student loan debt, economic opportunity loss, and worsening career obstruction.

- Federal Authority: *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

- Nevada Authority: *City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889 (2002)

**D**. **Equitable Tolling Due to Disability and COVID-19 Impact**

Plaintiff, a disabled senior citizen, faced substantial barriers in navigating legal recourse, compounded by WGU's administrative stonewalling and the COVID-19 pandemic. Extraordinary circumstances—recognized by both federal and Nevada courts—justify equitable tolling.

- Federal Authority: *Holland v. Florida*, 560 U.S. 631 (2010)

- Nevada Authority: *Seino v. Employers Ins. Co.*, 121 Nev. 146 (2005)

**E. COVID-19 Judicial Tolling Orders**

The pandemic triggered court-issued tolling orders affecting deadlines across the state and federal dockets. The Plaintiff's limitations period was tolled under these judicial orders, further supporting the timeliness of this action.

- Nevada Authority: Nevada Supreme Court Admin. Order AO-0017 (2020)

**Conclusion-** claims are timely and properly filed

13. Plaintiff's claims are not time-barred. The statutes of limitations were tolled under several well-established legal doctrines supported by case law and statute. Allen's injuries are ongoing and compounded by Defendants' continuing refusal to remedy the harm. The Court should reject Defendants' statute of limitations defense and allow this case to proceed to discover the merits.

## V. FACTUAL ALLEGATIONS

14. Plaintiff Edward C. Allen ("Allen") is a disabled senior citizen (now 66 yrs of age) with a documented learning disability. Allen has twice graduated from WGU with master's degrees (MBA, MSML) and subsequently enrolled in the Master of Education – Instructional Design (MEID) program around May 2019.

15. Allen relied on WGU's express representations and promotional materials promising an inclusive, ADA-compliant, equitable educational environment that would provide reasonable accommodations and support disabled students in completing their degrees.

16. WGU accepted federal Title IV funding for Allen's enrollment, thereby binding itself to fiduciary and statutory compliance with the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and Department of Education requirements for fair administration of student loan-supported education.

17. Allen successfully completed over 85% of the MEID program, consistently performing at a high academic level and even receiving an "Excellence Award" in 2020. Only the capstone project remained.

18. Beginning in late 2020 and through 2021, WGU refused to accommodate Allen's long-standing and previously honored requests for in-person or accessible proctoring services. Instead, WGU required Allen to use "Examity," a third-party overseas video proctoring service that Allen had informed WGU was incompatible with his disability.

19. On or around October 31, 2021, Allen experienced a breakdown during an Examity proctoring session, due to anxiety and confusion stemming from the disorganized, delayed, and linguistically inaccessible session.

20. Following this incident, WGU initiated disciplinary proceedings against Allen, citing alleged violations of a teacher conduct code that had never been disclosed or contractually applied to him. These proceedings culminated in Allen's expulsion in early 2022.

21. WGU administrators, including Defendants—relied on an unsubstantiated and inflammatory allegation by mentor Elizabeth Krippner, who falsely claimed that Allen was a threat to her safety. Despite the lack of evidence and Allen's lawful off-campus exercise of free speech, WGU terminated Allen's enrollment.

22. WGU refused Allen's requests to allow attorney representation in conduct hearings, to appeal adverse findings with due process protection, or to re-enroll to complete his final course project.

23. As a result of WGU's actions, Allen incurred substantial financial harm (e.g., non-refundable tuition, continuing federal loan obligations), emotional distress, reputational damage, and the complete loss of educational and economic opportunity associated with the MEID degree.

24. Allen was not only denied promised and legally required disability accommodation but was also subjected to retaliatory conduct by WGU and its individual administrators. This retaliation culminated in his wrongful expulsion, depriving him of the academic benefit for which he had paid and nearly completed. WGU's conduct publicly stigmatized Allen, caused reputational harm, and was substantially motivated by Allen's lawful assertions of his disability rights and critical speech regarding WGU's administrative failures—violating his statutory rights under the ADA and Rehabilitation Act, and breaching WGU's contractual obligations

25. Plaintiff Allen exhausted all reasonable internal remedies available to him within WGU's institutional framework. In 2022, Allen issued a formal Notice and Demand for redress to WGU's administration outlining the violations alleged herein. WGU failed to meaningfully respond, leaving Allen with no adequate alternative but to seek relief through this Court

26. As a direct and proximate result of Defendants' unlawful conduct, Allen remains burdened by substantial student debt for educational benefits never conferred. He continues to suffer ongoing reputational harm and economic injury, including the loss of employment and career advancement opportunities, directly attributable to WGU's intentional and discriminatory actions.

**V-A: <u>WGU's Quasi-State Actor Status and Federal Constitutional Accountability</u>**

**Legal and Factual Foundations**

27. While WGU is formally a private, nonprofit institution, its extensive entwinement with state governments and reliance on public funding establishes it as a quasi-state actor. This status subjects WGU to constitutional obligations, including adherence to the First and Fourteenth Amendments.

**i. State Creation and Oversight**

WGU was established in 1997 by the governors of 19 U.S. states, with the explicit intent to expand access to higher education through a competency-based model. Several states have since created affiliated online institutions, such as WGU Indiana, WGU Texas, and WGU Washington, through executive orders or legislation. These state actions demonstrate a significant degree of governmental involvement in WGU's creation and operation.

Oklahoma City University School of Law+1Wikipedia+1Wikipedia

**ii. Public Funding and Financial Aid**

WGU's operations are heavily subsidized by federal and state funds. The university is approved by the U.S. Department of Education to offer federal student aid in all its degree programs, including Pell Grants and student loans. Additionally, WGU has received substantial funding through the Higher Education Emergency Relief Fund (HEERF), with $39 million allocated in 2021 alone. Wikipedia+2Western Governors University+2Western Governors University+2Western Governors University

### iii. Governmental Functions and Public Purpose

WGU performs functions traditionally associated with state institutions, such as providing higher education to the public. Its mission aligns with public objectives, including increasing educational attainment and workforce readiness. The university's partnerships with state governments and its role in administering public education programs further underscore its public character. Western Governors University

### iv. Legal Precedents on State Action

The U.S. Supreme Court has held that private entities can be considered state actors when their actions are "fairly attributable to the State." In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001), the Court found that a nominally private organization was a state actor due to pervasive entwinement with public institutions. Similarly, in *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), the Court acknowledged that a private school's receipt of public funds and regulation by the state could render its actions attributable to the state.

### Conclusion

28. Given WGU's origin through state initiatives, substantial public funding, performance of public educational functions, and close ties with state governments, it operates as a quasi-state actor. Consequently, WGU is subject to constitutional constraints, and

[FIRST AMENDED] COMPLAINT    -10-

Allen's claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights are legally tenable.

## VI.   <u>CAUSES OF ACTION</u>

29. Plaintiff Edward C. Allen incorporates by reference all preceding paragraphs as though fully set forth herein. The following causes of action are asserted based on the detailed factual allegations above, which meet the standards of Federal Rule of Civil Procedure 8(a) by presenting a clear, plausible, and coherent narrative supported by specific facts. Contrary to Defendants' assertions in their Motion to Dismiss, the Complaint is not vague or conclusory but rather alleges with particularity a series of wrongful acts committed by WGU and its individual agents that violate Plaintiff's statutory, constitutional, and contractual rights. Each cause of action arises from the same core facts and continuing violations described above and is timely asserted under the doctrine of equitable tolling, fraudulent concealment, continuing violation and the discovery rule as addressed in Section IV. As such, Plaintiff pleads the following causes of action:

### <u>FIRST CAUSE OF ACTION</u>

**Violation of Title III of the Americans with Disabilities Act (42 U.S.C. § 12182)**

**(Against Defendant WGU and Individual Defendants)**

30. Plaintiff repeats and realleges each and every preceding paragraph as though fully set forth herein.

31. Plaintiff Allen is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102

32. Plaintiff Allen provided timely and adequate notice of his disability and submitted formal requests for reasonable accommodations during his period of enrollment at Western Governors University ("WGU").

33. WGU is a nonprofit online university providing educational services nationwide. It is open to the general public and accessible through its online platform, offering admissions, coursework, evaluations, and credentialing to students across the United States.

34. Under 42 U.S.C. § 12181(7)(J), WGU qualifies as a **place of public accommodation** due to its provision of postsecondary education services. See also *Carparts Distribution Ctr. v. Auto. Wholesalers Ass'n*, 37 F.3d 12 (1st Cir. 1994) (holding public accommodations include virtual institutions not limited to physical structures).

35. In addition, WGU receives and depends on federal Title IV student aid funds for the majority of its tuition revenue—rendering it a de facto **quasi-public actor** subject to public disability accommodation obligations under both federal funding regulations and constitutional analogs. See *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) (state action can arise from entwinement with public functions or funding); see also *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 970 (9th Cir. 1996) (ADA applies where public access and federal funding intersect).

36. WGU promotes itself as a public-serving, low-cost education solution subsidized by U.S. Department of Education resources. At minimum, it performs a **public function**—rendering it subject to federal ADA mandates under either Title II (quasi-state actor) or Title III (public accommodation), or both.

37. The Defendant WGU is subject to the requirements and obligations of Title III of the Americans with Disabilities Act (ADA), pursuant to 42 U.S.C. § 12181(7)(J).

38. The Plaintiff requested reasonable and timely accommodation, including, but not limited to, appropriate communication platforms, extended deadlines due to disability-related challenges, in person proctoring, and alternative methods of assessment.

39. Defendants failed to provide such accommodations and engaged in a pattern of neglect, delay, and refusal, which resulted in the denial of full and equal access to WGU's academic offerings and learning platform.

40. Ultimately, WGU expelled Plaintiff during his ongoing ADA accommodation dispute, compounding the discriminatory denial of benefits with an act of retaliatory exclusion and institutional silencing.

41. These acts and omissions constitute violations of Title III of the ADA, 42 U.S.C. § 12182, and related regulations, including:

- 28 C.F.R. § 36.302 (reasonable modifications of policies, practices, or procedures);

- 28 C.F.R. § 36.303 (effective communication via auxiliary aids and services);

- 28 C.F.R. § 36.501 (enforcement provision allowing for equitable and monetary remedies).

42. As a direct result of Defendant's conduct, Plaintiff was deprived of the educational benefit he contracted for (accrued student loan debt without educational value / loss of degree conferral and academic standing), suffered academic penalties, and was

humiliated by prejudicial due process (emotional distress, reputational harm, and employment disadvantage)

43. Defendants, while accepting federal tuition funding for Plaintiff Allen's enrollment, failed to provide reasonable accommodation required under federal disability law. Despite Allen's repeated efforts to resolve the issue internally and his demonstrated academic commitment—reflected in prior awards and consistent progress—Defendants ultimately expelled him from the program. This expulsion occurred after a pattern of neglecting accommodation requests and reflects discriminatory treatment in violation of Title III of the ADA.

44. Defendant's actions and omissions constitute unlawful discrimination in violation of Title III of the ADA, as such actions denied Plaintiff full and equal enjoyment of WGU's services, programs, and facilities.

45. The Defendants acted with knowledge of Plaintiff's disability and in deliberate disregard of its obligations under federal law.

46. Plaintiff has no adequate remedy at law and has suffered irreparable harm, including loss of educational benefit, reputational damage, emotional distress, and accrual of unjust student loan debt thus with no alternative than to initiate this instant lawsuit.

47. Plaintiff seeks declaratory relief, injunctive relief requiring WGU to adopt ADA-compliant accommodation policies and expunge his expulsion, compensatory damages, and attorneys' fees and costs under 42 U.S.C. § 12188(a)(1).

/ / /

/ / /

## SECOND CAUSE OF ACTION
**Retaliation in Violation of Americans with Disabilities Act (42 U.S.C. § 12203)**
**(Against Defendant WGU and Individual Defendants)**

48. Plaintiff incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

49. The Plaintiff engaged in protected activity by requesting reasonable accommodation and filing internal grievances asserting WGU's non-compliance with the ADA and its contractual obligations.

50. In response to Plaintiff's protected conduct, Defendants retaliated by:

    a. Delaying or ignoring accommodation requests,

    b. Removing Plaintiff from academic standing without fair process,

    c. Disseminating communications defaming Plaintiff's academic status and capacity,

    d. And expelling Plaintiff in a manner intended to suppress further complaints or escalation.

51. The above-described actions were causally connected to Plaintiff's protected activity and were taken in bad faith and with discriminatory animus.

52. Defendants' retaliatory conduct directly caused Plaintiff to suffer expulsion, educational deprivation, reputational harm, economic injury, and ongoing mental distress.

53. These acts constitute unlawful retaliation in violation of 42 U.S.C. § 12203(a).

54. Plaintiff seeks declaratory and injunctive relief, reinstatement or alternative remedy appropriate under law, compensatory damages, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794
### (Against Defendant WGU)

55. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

56. Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability... shall, solely because of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

57. At all relevant times, Defendant WGU received federal financial assistance within the meaning of the Rehabilitation Act through participation in federal student aid programs under Title IV of the Higher Education Act.

58. Plaintiff Allen is a qualified individual with a disability under the Rehabilitation Act. He was admitted into and participated in the educational programs offered by WGU and could fulfill the essential requirements of the graduate program with reasonable accommodations.

59. Defendant WGU, acting through its agents and administrators, failed to provide Plaintiff with reasonable accommodation as required under Section 504, despite Plaintiff's timely requests supported by documentation of disability.

60. WGU's conduct includes the denial of accommodation in testing and assignments, administrative delays in responding to requests, and retaliation in the form of dismissal when Plaintiff engaged in protected activity—asserting his right to disability accommodations.

61. The conduct described herein was intentional or, at minimum, exhibited deliberate indifference to Plaintiff's federally protected rights.

62. As a direct and proximate result of Defendant's violation of Section 504, Plaintiff has suffered economic losses, emotional distress, reputational harm, and has incurred ongoing damage, including student loan debt for educational services and degree advancement that were never realized.

63. The Plaintiff Allen seeks judgment against Defendant WGU for injunctive relief, compensatory damages, statutory attorney fees and costs, and such other relief as the Court deems just and proper under the Rehabilitation Act.

### FOURTH CAUSE OF ACTION
**Violation of Plaintiff's Procedural Due Process Rights and
Retaliation under 42 U.S.C. § 1983**
*(Against Defendants WGU and Individual Defendants, in their official capacities)*

64. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

65. Under 42 U.S.C. § 1983, any person acting under color of state law who deprives another of their constitutional rights is liable for those violations.

66. Although Defendant Western Governors University (WGU) presents itself as a private nonprofit institution, WGU acts under color of state law and performs a public function, as it receives and depends upon federal and state funding for over 95% of its operating revenue, including Title IV tuition funding, Pell Grants, and other federal financial aid sources.

67. WGU maintains partnerships with multiple state governments across the United States to provide public-access, competency-based education. In doing so, it assumes the role and responsibilities of a quasi-governmental institution engaged in the public administration of higher education.

68. Under the "nexus" and "entwinement" doctrines recognized by the Supreme Court in *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001), and by the Ninth Circuit in *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012), WGU's close coordination with state entities and its reliance on government funding qualify it as a state actor for purposes of § 1983 liability.

69. Plaintiff Allen was entitled to due process protections before any adverse educational or disciplinary action, including meaningful notice and an opportunity to be heard, pursuant to *Goss v. Lopez*, 419 U.S. 565 (1975).

70. Instead, Plaintiff was expelled from WGU without formal notice of charges, without a hearing, and without an opportunity to respond. The decision was made following Plaintiff's continued assertion of rights to disability accommodation and complaints against WGU personnel.

71. The Individual Defendants, in coordination with WGU, engaged in retaliatory acts culminating in Allen's expulsion in violation of clearly established constitutional protections under the Fourteenth Amendment and federal civil rights law.

72. Plaintiff also seeks **declaratory relief** under 28 U.S.C. § 2201(a) to establish that Defendants violated his constitutional rights, and that the expulsion was invalid, unlawful, and should be rescinded.

73. Plaintiff seeks **injunctive relief** requiring Defendants to:

- Rescind the expulsion;

- Reinstate Plaintiff to good academic standing with accommodations;

- Reform internal policies to provide constitutionally adequate due process for students facing expulsion or academic penalties;

- And adopt grievance procedures consistent with 34 C.F.R. § 104.7 and related federal disability rights statutes.

74. These remedies are appropriate because Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm, including reputational damage, employment loss, and continuing financial injury due to WGU's unlawful expulsion unless enjoined by the Court.

## FIFTH CAUSE OF ACTION
### Breach of Contract
#### (Against Defendant Western Governors University)

75. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. At all times relevant, Plaintiff Edward C. Allen entered into a binding contractual relationship with Defendant Western Governors University ("WGU") by enrolling as a student, paying tuition, and fulfilling academic requirements in reliance on WGU's express and implied representations of services, benefits, and institutional responsibilities.

77. The terms of the contract between Plaintiff and WGU are reflected in, and may be judicially noticed or incorporated by reference from, the following materials issued or made available by WGU:

- WGU's online enrollment agreement and course enrollment confirmation;

- WGU's Student Handbook and Code of Conduct;

[FIRST AMENDED] COMPLAINT    -19-

- Academic Progress and Grading Policies;

- WGU's published Disability Accommodation and Accessibility Policy;

- WGU's Title IX, FERPA, and non-discrimination compliance representations;

- WGU marketing and communications materials touting "accessible, affordable, student-centered" education and equal opportunity.

78. These materials, collectively and in context, form a binding contractual promise that WGU would:

- Provide reasonable accommodations to qualified students with disabilities;

- Uphold students' rights to fair evaluation and timely graduation;

- Protect students from retaliatory administrative action;

- Offer a predictable, competency-based degree pathway subject to good faith standards of performance and institutional support.

79. Plaintiff fully performed his obligations under the contract, including tuition payments, academic participation, and adherence to formal WGU processes to request accommodations and address grievances.

80. Defendant WGU materially breached the contract by:

- Failing to provide or act on disability accommodation requests despite adequate notice;

- Denying academic credit based on inaccessible assessment platforms;

- Subjecting Plaintiff to expulsion without due process or recourse;

- Failing to apply its own academic grievance and ADA policies;

- Depriving Plaintiff of access to earned educational benefit and degree conferral.

81. As a direct and proximate result of Defendant's breach, Plaintiff suffered significant financial, reputational, and professional harm, including but not limited to:

- Tuition loss and student loan debt for undelivered educational services;

- Reputational injury impairing career and academic prospects;

- Emotional distress and loss of educational opportunity.

82. Plaintiff seeks compensatory damages, declaratory judgment that WGU violated the contract, and equitable relief to restore or rescind the impact of WGU's wrongful expulsion and denial of services.

### SIXTH CAUSE OF ACTION
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
*(Against Defendant Western Governors University)*

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

84. In every contract under Nevada and federal law, there is an implied covenant of good faith and fair dealing which requires that neither party do anything that will injure the right of the other to receive the benefits of the agreement.

85. Plaintiff and Defendant Western Governors University ("WGU") entered into a contractual relationship through Plaintiff's enrollment, tuition payments, participation in coursework, and reliance upon published university policies, procedures, and representations.

86. WGU's representations in its Student Handbook, Academic Policies, ADA/Accessibility Statements, Enrollment Terms, and institutional marketing materials formed the basis of Plaintiff's reasonable expectations under the contract.

87. Plaintiff reasonably expected that:

- WGU would process and respond to his disability accommodation requests in good faith;

- WGU would not expel him for seeking protections under the Americans with Disabilities Act;

- WGU would not engage in retaliatory grading, exclusion, or academic sabotage;

- WGU would fulfill its mission to support nontraditional and disabled learners in achieving a degree.

88. WGU breached the implied covenant of good faith and fair dealing by:

- Deliberately ignoring Plaintiff's documented accommodation needs;

- Obstructing his academic progress through rigid, inaccessible assessments;

- Terminating Plaintiff's enrollment under pretext after he invoked disability protections;

- Weaponizing administrative processes to avoid compliance with civil rights obligations.

89. WGU's conduct was willful, arbitrary, and calculated to deprive Plaintiff of the benefits of his contractual relationship with the university, including timely degree completion and access to educational opportunity.

90. As a result of WGU's breach of this implied covenant, Plaintiff has suffered:

- Substantial financial damages, including wasted tuition and debt obligations;

- Emotional and reputational harm due to academic dismissal;

- Loss of expected career and educational advancement.

91. Plaintiff seeks damages for breach of the implied covenant, along with such other relief as the Court deems just and proper, including equitable remedies to expunge academic penalties and restore lost educational standing.

## SEVENTH CAUSE OF ACTION
**Promissory Estoppel**
*(Against Defendant Western Governors University)*

92. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93. Under federal and Nevada law, a cause of action for promissory estoppel requires:

(a) a clear and unambiguous promise;

(b) reasonable and foreseeable reliance on that promise;

(c) actual reliance; and

(d) resulting detriment.

See *Vancheri v. GNLV Corp.*, 105 Nev. 417, 777 P.2d 366 (1989); *Restatement (Second) of Contracts* § 90.

94. Defendant WGU made repeated and express promises to Plaintiff, both in writing and through its conduct, including:

- That all students—regardless of disability—would receive reasonable accommodations and support under the ADA and Section 504;

- That WGU's online, flexible learning model was specifically designed to accommodate adult learners, including those with disabilities;

- That Plaintiff would have access to institutional grievance procedures to resolve disputes and seek redress.

95. These promises were made through:

- Published disability accommodation policies;

- Marketing materials and enrollment agreements;

- Communications from student mentors, faculty evaluators, and the Office of Student Accessibility;

- WGU's own submission and certification of Title IV federal funding under the U.S. Department of Education, which mandates ADA compliance.

96. Plaintiff reasonably relied on these representations in:

- Enrolling at WGU;

- Paying tuition and incurring student debt;

- Investing years of time and effort into the completion of his graduate degree;

- Refraining from enrolling in alternative programs based on WGU's representations of support and flexibility.

97. WGU knew or should have known that Plaintiff, a disabled student, would rely on its ADA commitments in choosing WGU as an academic institution.

98. Instead, WGU abruptly withdrew Plaintiff from the program after:

[FIRST AMENDED] COMPLAINT    -24-

- Denying him timely accommodations;

- Penalizing him for asserting disability-related rights;

- Ignoring his formal grievance submissions.

99. As a direct result of this detrimental reliance, Plaintiff suffered:

- Economic loss in the form of unreimbursed tuition and increased student debt;

- Lost educational and professional opportunity;

- Emotional and reputational harm.

100. Injustice can only be avoided by enforcing WGU's promises and estopping WGU from denying the existence and impact of those assurances.

101. Plaintiff seeks equitable and compensatory relief as permitted under the doctrine of promissory estoppel.

### EIGHTH CAUSE OF ACTION
### Negligent Misrepresentation
### (Against Defendant Western Governors University and Individual Defendants)

102. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

103. Defendants, through representatives and written materials, made representations to Plaintiff Allen during the admissions process and throughout his enrollment that:

- He would receive meaningful disability accommodations tailored to his needs;

- In-person or local proctoring was either unavailable or prohibited by policy;

- He was required to test using a remote overseas-based proctor platform despite having objected based on disability-related needs;

o Program completion, if requirements were met, would culminate in a master's degree as advertised and endorsed.

104. These representations were made without reasonable grounds for believing them to be true, and in fact, were contradicted by WGU's internal policies and later communications. Specifically, WGU later admitted in email correspondence (as referenced in Allen's prelitigation **Notice of Demand**, Bates No. ECA-Demand-2022-07-11) that **local proctoring had always been available**—a material fact that, had it been disclosed timely, would have changed the nature of Allen's participation and avoided subsequent disability-related harms and expulsion.

105. Defendants owed Plaintiff a duty of care as a matriculated student reliant on WGU's guidance, policies, and academic support services, particularly given his documented disability and ADA qualification.

106. Plaintiff justifiably relied on the misstatements and omissions to his detriment, by:

o Attempting to comply with a remote proctoring format that was inappropriate given his condition;

o Not pursuing local proctoring accommodations earlier, based on WGU's false representations;

o Continuing enrollment under the false belief that WGU would honor its obligations under the ADA and institutional policies.

107. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff sustained:

- Economic injury including wasted tuition, loan debt, and lost employment opportunities;

- Reputational harm and severe emotional distress;

- Expulsion from the program under fraudulent pretenses rather than for any academic failure.

108. Defendants' conduct constituted a breach of their duty to provide accurate, non-deceptive information to a qualified student with disabilities, and directly led to the deprivation of educational benefits.

109. Plaintiff respectfully seeks actual and consequential damages, equitable relief, and such further relief as the Court deems just and proper.

## VII.   FEDERAL CIVIL RIGHTS CLAIMS

110. Plaintiff Edward Allen hereby asserts the following constitutional claims under 42 U.S.C. § 1983, arising from the Defendants' conduct while acting under color of law and/or as quasi-state actors. These claims are pled in the alternative and in addition to Plaintiff's statutory causes of action under the Americans with Disabilities Act and Rehabilitation Act. The allegations contained herein support violations of Allen's clearly established rights under the First and Fourteenth Amendments to the United States Constitution, as well as corresponding liberties protected under federal civil rights jurisprudence.

/ / /

/ / /

/ / /

## NINTH CAUSE OF ACTION
### Violation of First Amendment – Freedom of Expression
### (42 U.S.C. § 1983 – Against WGU and Individual Defendants)

111.    Plaintiff re-alleges and incorporates all preceding paragraphs as if fully stated herein.

112.    WGU and the individual defendants, acting under color of law or as agents of a quasi-state institution receiving and administering federal educational funds, unlawfully interfered with Plaintiff's First Amendment rights.

113.    Plaintiff engaged in protected expression through email communications, disability complaints, and private video-based proctoring within his off-campus residence. These communications addressed systemic disability discrimination and institutional failures by WGU.

114.    WGU retaliated against Plaintiff for engaging in this protected speech by initiating expulsion proceedings and mischaracterizing his conduct as "threatening," despite the lack of any credible evidence of such behavior.

115.    Defendants' disciplinary measures were motivated in substantial part by Plaintiff's criticism of WGU's policies and conduct, constituting a viewpoint-based restriction on speech, in violation of constitutional standards articulated in *Tinker v. Des Moines*, 393 U.S. 503 (1969), *Brandi Levy v. Mahanoy Area School District*, 141 S. Ct. 2038 (2021), and their progeny.

116.    WGU's online education platform, while virtual, maintains institutional reach and control sufficient to trigger First Amendment protections even for off-campus expression, particularly where no substantial disruption is present.

117.     As a direct result of Defendants' unconstitutional conduct, Plaintiff has suffered reputational harm, denial of education, loss of academic records, and emotional distress.

**TENTH CAUSE OF ACTION**
**Violation of Fourteenth Amendment – Procedural Due Process**
**(42 U.S.C. § 1983 – Against WGU and Individual Defendants)**

118.     Plaintiff re-alleges and incorporates all preceding paragraphs as if fully stated herein.

119.     WGU, acting as a state-implicated institution by virtue of its pervasive reliance on federal funds and regulation, owed Plaintiff the protections of procedural due process in connection with any disciplinary or academic removal proceedings.

120.     Plaintiff was deprived of notice, a fair hearing, and any opportunity to meaningfully respond before being expelled. WGU failed to provide a neutral decision-maker or appeal structure compliant with due process standards.

121.     Defendants failed to follow even their own published procedures, and there was no administrative forum in which Plaintiff could confront the allegations or present evidence.

122.     Defendants' actions violate the due process clause as interpreted in *Goss v. Lopez*, 419 U.S. 565 (1975) (recognizing student rights to fair process), and other authorities holding that quasi-public institutions must afford minimum process before depriving students of their liberty or property interests in education.

123.    Plaintiff has been harmed as a result of Defendants' unconstitutional procedures, including but not limited to: unjust expulsion, loss of educational benefit, and prolonged debt burdens.

## ELEVENTH CAUSE OF ACTION
### Violation of Fourteenth Amendment – Equal Protection Clause
### (42 U.S.C. § 1983 – Against WGU and Individual Defendants)

124.    Plaintiff re-alleges and incorporates all preceding paragraphs as if fully stated herein.

125.    Plaintiff was treated differently from similarly situated students based on his disability and/or in retaliation for exercising his protected rights.

126.    Defendants failed to accommodate Plaintiff in the same manner as other students, denied him access to resources, and targeted him for expulsion in a manner that departs from their treatment of non-disabled students.

127.    Defendants' conduct lacked any legitimate educational justification and was discriminatory in both purpose and effect.

128.    These acts violate the Equal Protection Clause of the Fourteenth Amendment, as interpreted in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (recognizing "class of one" discrimination).

129.    Plaintiff seeks appropriate declaratory, injunctive, and monetary relief to redress the ongoing injuries caused by this unconstitutional conduct.

/ / /

/ / /

[FIRST AMENDED] COMPLAINT    -30-

**TWELFTH CAUSE OF ACTION**
**Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985(3))**
**(Against WGU and Individual Defendants in Official and Personal Capacities)**

130.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

131.      Defendants, including WGU administrators, conspired by concerted action to deprive Plaintiff of equal protection and equal privileges under the law, as guaranteed by the Constitution and federal civil rights statutes.

132.      Upon receiving notice of Plaintiff Allen's protected requests for disability accommodations and protected speech criticizing WGU's noncompliance, Defendants participated in coordinated internal communications designed to isolate, retaliate against, and ultimately remove Allen from the graduate program.

133.      The conspiracy included intentional acts such as:

   o   Ignoring formal accommodation requests,

   o   Falsifying or suppressing proctoring access communications,

   o   Retaliatory expulsion processes lacking due process,

   o   Fabricating a "threat" pretext,

   o   Internal email threads and joint decisions designed to silence and defame Plaintiff for protected conduct.

134.      The conspiracy was motivated by discriminatory animus against Plaintiff on the basis of his disability, protected ADA participation, and expression of civil rights grievances.

135.    No legitimate educational or institutional reason justified the coordinated deprivation of Plaintiff's rights, and the actions taken exceeded any rational disciplinary response.

136.    The acts alleged resulted in:

o    Violation of Plaintiff's rights under the First and Fourteenth Amendments;

o    Deprivation of due process in disciplinary proceedings;

o    Loss of access to educational opportunity;

o    Reputational harm and emotional distress;

o    Accrued financial debt and lasting career injury.

137.    This cause of action is pled pursuant to **42 U.S.C. § 1985(3)**, which prohibits conspiracies to interfere with civil rights through coordinated discriminatory conduct under color of law or in connection with federally regulated activity.

138.    Defendants' actions were willful, malicious, and taken with conscious disregard for Plaintiff's federally protected rights, justifying both compensatory and punitive damages.

139.    Plaintiff respectfully seeks declaratory relief, injunctive relief, compensatory and punitive damages, and attorneys' fees as provided under federal law

### THIRTEENTH CAUSE OF ACTION
**Neglect to Prevent Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1986)**
**(Against Individual Defendants in Official and Personal Capacities)**

140.    Plaintiff re-alleges and incorporates all preceding paragraphs by reference as though fully set forth herein.

141.    Pursuant to **42 U.S.C. § 1986**, any person who has knowledge of a conspiracy to interfere with civil rights under 42 U.S.C. § 1985 and who has the power to prevent or aid in preventing the commission of such wrongs, yet neglects or refuses to do so, is liable to the injured party.

142.    Each of the individual Defendants, by virtue of their administrative roles at Western Governors University, had direct knowledge or constructive awareness of the conspiracy to retaliate against Plaintiff Allen for exercising his rights under the ADA, Section 504, and the First and Fourteenth Amendments.

143.    Despite this knowledge and authority to act, Defendants—including but not limited to Rochelle Kahl, Robbyn Michaels, Rachel Lay, and Stan Schmidt—knowingly refused to intervene, correct, or halt the unconstitutional retaliation and discriminatory deprivation of rights.

144.    Defendants had both:

   o   Supervisory authority over those directly involved in the retaliatory conduct;

   o   Institutional responsibility for ensuring ADA compliance and due process protections under university policies.

145.    Defendants' neglect to prevent foreseeable constitutional and statutory violations—despite having legal and ethical duties to act—constitutes a violation of **§** 1986, especially where harm could have been mitigated or avoided by prompt action.

146.    As a result of Defendants' neglect, Plaintiff sustained:

   o   Loss of academic standing;

   o   Expulsion from the graduate program;

- Emotional and reputational harm;

- Debt accrual and lost future earning potential.

147. Plaintiff is entitled to relief under **42 U.S.C. § 1986**, including compensatory damages and costs, as the statute provides redress where § 1985 violations are facilitated through willful inaction.

148. Plaintiff respectfully requests judgment against Defendants under 42 U.S.C. § 1986 for damages, equitable relief, and all other remedies the Court deems just and proper.

## IX. CONCLUSION

149. Plaintiff has presented a First Amended Complaint that satisfies the pleading standards required under **Federal Rule of Civil Procedure 8(a)** and the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This Complaint articulates with sufficient clarity the nature of the injuries suffered, the legal duties breached, and the unlawful conduct of Defendants, both institutional and individual.

150. The claims are supported by detailed factual allegations and legal theories grounded in constitutional, statutory, and common law. Plaintiff respectfully asserts that this pleading warrants a response on the merits and a progression of this matter beyond the pleading stage and into discovery, where further factual development will serve the interests of justice and resolution of the claims.

151. To the extent the Court finds any part of this Complaint deficient, Plaintiff respectfully requests leave to amend, as is consistent with the liberal standard under Federal Rule of Civil Procedure 15(a)(2) ("The court should freely give leave when justice so requires.") and well-settled authority favoring amendment. See *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be freely granted in the absence of bad faith, undue delay, or futility).

152.    The Plaintiff Allen submits this First Amended Complaint as a matter of right pursuant to Rule 15(a)(1)(B) and asks that Defendants be ordered to answer the allegations and this matter proceed to discovery and resolution on the merits.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Edward C. Allen respectfully requests that this Court enter judgment in his favor and against Defendants Western Governors University and the individual defendants named herein, and grant the following relief:

1.  **Declaratory Relief** pursuant to 28 U.S.C. § 2201:

    o   Declaring that Defendants violated Plaintiff's rights under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the U.S. Constitution;

    o   Declaring that Defendants' policies and conduct constitute unlawful retaliation, discrimination, and procedural due process violations.

2.  **Injunctive Relief** requiring Defendants to:

    o   Expunge Plaintiff's academic dismissal and restore academic standing;

    o   Permit Plaintiff to complete his degree with lawful accommodations;

    o   Reform institutional policies to ensure compliance with federal disability rights and constitutional safeguards.

3. **Compensatory Damages** for:

   o   Educational, reputational, and economic harm;

   o   Out-of-pocket losses and tuition paid;

   o   Emotional distress and mental anguish.

4. **Statutory Damages and Civil Penalties** under applicable federal law.

5. **Punitive Damages** against individual Defendants for willful and malicious conduct, to the extent allowed by law.

6. **Restitution and/or Disgorgement** for unjust enrichment derived from federal student loan disbursements secured through discriminatory and deceptive practices.

7. **Attorneys' Fees and Costs**, including under 42 U.S.C. §§ 1988, 12188, and all applicable statutory provisions.

8. **Prejudgment and Post-judgment Interest** on all sums awarded.

9. Any such further relief as the Court deems just and proper in law or equity.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable. This demand is made to preserve Plaintiff's right to a jury trial under the Seventh Amendment to the United States Constitution and is timely filed and served in accordance with the Federal Rules of Civil Procedure.

Dated this 8th day of May 2025

RESPECTFULLY SUBMITTED BY:

/s/Edward C. Allen/s/
1930 Village Center Circle, Ste 3-525
Las Vegas, NV 89134
310-770-8495   Email: legalify@gmail.com
*Plaintiff in Pro se*

**VERIFICATION**

I, **Edward C. Allen**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in this action; that I have read the foregoing First Amended Complaint and know the contents thereof; and that the same is true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on this 8th day of May , 2025.

/s/Edward C. Allen/s/
*Plaintiff, Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of May 2025, I served a true and correct copy of the foregoing PLAINTIFF'S [FIRST AMENDED] COMPLAINT AGAINST DEFENDANTS  [(FRCP 15(a)(1)(B)]  by the Court's CM/ECF system and via electronic mail to:

Z. Ryan Pahnke, Esq. RAY QUINNEY & NEBEKER P.C.
Email: rpahnke@rqn.com
David J. Malley, Esq. HUTCHISON & STEFFEN PLLC Email:
dmalley@hutchlegal.com
Attorneys for Defendants

By: /s/ Edward C Allen**,** *Plaintiff, Pro Se*